IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MONTE A. RUFFIN
103 G Street S.W., Apt. B803
Washington, DC  20024

          *Plaintiff,*

   v.

CONGRESSIONAL BUDGET OFFICE
Ford House Office Building, 4th Floor
Second & D Streets, S.W.
Washington, DC 20515-6925

Serve:  DOUGLAS W. ELMENDORF
        (in his official capacity)
        Director of the Congressional Budget Office
        Ford House Office Building, 4th Floor
        Second & D Streets, S.W.
        Washington, DC 20515-6925

Serve:  The Hon. RONALD C. MACHEN, JR.
        United States Attorney for the
        District of Columbia
        ATTN: Civil Process Clerk
        555 4th Street N.W.
        Washington, DC  20530

Serve:  The Hon. ERIC HOLDER or his
        Designated Representative
        Attorney General of the United States
        Department of Justice
        Room B-103
        950 Pennsylvania Ave. N.W.
        Washington, DC  20530-0001

          *Defendant.*

JURY TRIAL DEMANDED

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

## I. INTRODUCTION

**COMES NOW** Plaintiff MONTE A. RUFFIN, by and through his undersigned counsel, who hereby brings this action against his current employer, the CONGRESSIONAL BUDGET OFFICE (hereinafter "CBO" or "Employer"), for its violations of Section 201(a)(1) and Section 207(a) of the Congressional Accountability Act.

## II. JURISDICTION AND VENUE

1. The subject matter jurisdiction of this Court is invoked pursuant to the provisions of 2 U.S.C. §1408(a).  MONTE A. RUFFIN: (1) is a covered employee by virtue of his position with the CBO (a covered employing agency); (2) completed counseling and mediation pursuant 2 USC §§ 1402-03; and (3) filed this civil action within the time period prescribed in 2 U.S.C. §1404 following receipt of notice of the end of mediation.

2. Personal jurisdiction over Defendant is invoked pursuant to 2 U.S.C. §1408(b).

3. Venue is proper because Defendant is predominantly located within this District and the actions complained of occurred within this District.  Furthermore, there is but one Court within the jurisdiction.

## III. PARTIES

4. Plaintiff MONTE A. RUFFIN (hereinafter referred to as "Ruffin" or Plaintiff) prior to, during, and after the incidents which give rise to this complaint was a resident of Washington, DC.

5. Defendant CONGRESSIONAL BUDGET OFFICE is a United States Government legislative agency primarily located in the United States Capitol Complex.

6. Prior to, during and after the incidents which give rise to this complaint Plaintiff was an employee of the CBO.

7. Plaintiff is an African American male.

8. During Plaintiff's employ with Defendant the majority of his supervisory chain, and indeed most members of management, appeared to be African American.

9. Albert J. DuPree, an African American male, was a supervisor in Defendant's Information Resource Management and Technology Services Unit (IRM). DuPree presently serves as Chief Information Officer.

10. DuPree formally became Plaintiff's direct supervisor on or about October 2012.

11. Rod Goodwin, since about February 2009, was the Defendant's Chief Administrative Officer. He was the first African American to be appointed to this position. Goodwin left the employ of the CBO on or about April 2013.

12. Stephanie M. Ruiz, a Caucasian female who does not appear to be of Hispanic descent despite her surname, served as Human Resources Director and Deputy Chief Administrative officer of the CBO since 2009.

13. Lenny Skutnik, a Caucasian male, served as a Computer Specialist with the CBO for many years prior to and during the earlier period of Plaintiff's employ by the CBO.

14. Douglas W. Elmendorf, a Caucasian male, has served as the Director of the CBO since January 2009. The Director, appointed jointly by the Speaker of the House of Representatives and the President pro tempore of the Senate, is the highest position in the CBO. The Director appoints all other CBO staff.

15. Defendant is an employer subject to both Title VII of the Civil Rights Act of 1964 as applied by the Congressional Accountability Act (hereinafter "CAA" or "the Act") as well as the prohibition of intimidation or reprisal contained within the CAA itself.

## IV.  FACTUAL ALLEGATIONS

16. In 2009, Defendant hired Plaintiff as an Offices Services Assistant.

17. In or about June 2010, Computer Specialist Lenny Skutnik retired.  Prior to his retirement, and during most of Plaintiff's first year as an employee of the CBO, Skutnik took substantial amounts of leave.

18. Prior to Skutnik's retirement, Plaintiff began performing many of Skutnik's duties. These duties were not duties of an Offices Services Assistant.

19. Following Skutnik's retirement, Plaintiff began performing more of Skutnik's former duties, eventually performing duties, some of greater complexity, than Skutnik rarely or ever performed.

20. Prior to November 2012, Plaintiff made several complaints that he was working out of class.  Defendant failed to act upon these complaints.

21. On or about December 20, 2012, during a meeting with them, Plaintiff confronted DuPree, Ruiz and Goodwin with the fact that he had been working out of class for an extended period of time and that his job title and compensation needed to be adjusted to reflect his actual duties.

22. Since the meeting on or about December 20, 2012, DuPree and Goodwin stated that Plaintiff should be promoted to the position of Computer Specialist and be paid within the then-established pay range for that position.

23. Approximately five months after the meeting of December 2012 an audit of Plaintiff's duties was finally initiated which revealed that more than half of Plaintiff's performed duties were those of a Computer Specialist.

24. During Goodwin's tenure as Chief Administrative Officer multiple positions within the

CBO were evaluated and pay ranges were established.

25. Goodwin informed Elmendorf that the manner in which CBO was creating and approving the new salary ranges would disproportionately affect CBO's African American employees. Elmendorf imposed the new salary ranges without regard to Goodwin's warning.

26. Despite having recently overhauled position pay ranges under Goodwin, Defendant either revised downward the pay range for an existing, though unused, position of Computer Support Specialist Level 1 and/or created a new position of Computer Support Specialist Level 1 and then established a lower pay range for the new position as compared to the then-employed Computer Specialists and/or Computer Support Specialists.

27. Plaintiff informed Goodwin and DuPree that he believed Defendant's failure to promote him promptly as well as the likely salary reduction for his potential upcoming promotion were based on racial discrimination.

28. Elmendorf was informed of Plaintiff's concerns that he was being treated differently due to his race.

29. Goodwin informed Elmendorf of Plaintiff's belief that he was suffering racial discrimination and that Plaintiff was likely to file a complaint based on racial discrimination if the salary for Plaintiff's promotion was not resolved favorably. Goodwin further informed Elmendorf that Goodwin would support Plaintiff's complaint were he to file it.

30. Goodwin met with Elmendorf on at least two occasions and discussed racial discrimination that he and other employees endured while working at CBO.

31. Elmendorf initially tasked Goodwin with revising Plaintiff's upcoming position to result

in a reduced salary.

32. When Goodwin, DuPree and others protested that the planned revision would be unfair to Plaintiff, Elmendorf assigned the task to Ruiz.

33. Ruiz has treated and continues to treat African American CBO employees differently than Caucasians.

34. Despite Goodwin having been her superior, Ruiz was frequently rude and disrespectful towards Goodwin.

35. Ruiz was particularly rude and disrespectful towards African American employees as compared to her treatment of Caucasian employees.

36. Ruiz has on numerous occasions behaved rudely and disrespectfully towards Plaintiff in ways that she does not behave towards Caucasian employees, including performance of a credit bureau check of Plaintiff, launching false investigations into Plaintiff and insisting, without articulable justification, that Plaintiff deserved a lower performance rating than he had actually received.

37. Plaintiff is informed and believes and thereon alleges that the pay range for the Computer Specialist position to which he should have been promoted was $65,000 to $90,000 annually.

38. Ruiz concluded that the salary range for Plaintiff's new position would be $50,000 to $80,000 annually.

39. Ruiz' evaluation of the salary for Plaintiff's new position used data and methods that were vague, inappropriate, incorrect and/or inconsistent.

40. Ruiz's evaluation merely listed the government employers "Senate," "House," "AOC," "GAO," and "LOC," as well as what appears to be the government employment website

"USAJOBS" and finally "NCR-HRA Surv" which is not further identified but Plaintiff is informed and believes refers to the *Human Resources Association of the National Capitol Area Annual Compensation Survey Report*. No specific job titles or dates were listed for any of these entities or sources. Dates, job titles and specific citations were not provided for USAJOBS or the *Survey Report*.

41. One of many inconsistencies is that no salary data is listed for "LOC"; accompanying notes state that "Position is contracted out". However, for "AOC" a salary range of 50,000 to 80,000 is listed; accompanying notes state "Contract position-not ee, GS 9-12 equivalent". No explanation is given for why salary data for a contract position at the AOC is used while salary data for a contract position at the LOC is not used.

42. Additionally, Plaintiff is informed and believes and thereon alleges that the pay range in the District of Columbia for GS 9-12 at the relevant time was actually $51,630 to $97,333 annually, not 50,000 to 80,000.

43. Another flaw in the Ruiz evaluation is found in the notes following USAJOBS which state "Range shown is GS 5-9; GS 5 for no experience goes to 44.3k, GS7 or 9 depending on experience and education for companies 100-249 employees, range is 56.1 – 86.0, avg is $70.5k". Yet, the range actually listed immediately alongside USAJOBS that appears to have been made part of Ruiz' calculations is 34,075 to 67,114.

44. Ruiz provides no explanation for why she considers **both** the AOC contracted position that is "**GS 9-12** equivalent" and the USAJOBS data for **GS 5-9** positions to be comparable to Plaintiff's new position.

## V.  STATEMENT OF CLAIMS

### COUNT I
### Violation of the Prohibition of Intimidation or Reprisal
### (2 U.S.C. §1317)

45. The foregoing paragraphs are incorporated herein as if set forth in full.

46. Plaintiff was subjected to intentional intimidation, reprisal and retaliation by Defendant and its agents resulting in being employed at a lower rate of pay for engaging in the protected activity of complaining to his superiors about his belief that racial discrimination was causing delay and the re-evaluation of his then forthcoming promotion.

47. Plaintiff was subjected to intentional intimidation, reprisal and retaliation by Defendant and its agents resulting in additional delay in his forthcoming promotion for engaging in the protected activity of complaining to his superiors about his belief that racial discrimination was causing delay and the re-evaluation of his then forthcoming promotion.

48. Plaintiff was subjected to intentional intimidation, reprisal and retaliation by Defendant and its agents resulting in being Plaintiff being promoted to a more junior position for engaging in the protected activity of complaining to his superiors about his belief that racial discrimination was causing delay and the re-evaluation of his then forthcoming promotion.

49. Defendant did not act in good faith as to any CAA §207 (2 U.S.C. §1317) violations alleged herein Count I.

### COUNT II
### Violation of Civil Rights
### (2 U.S.C. §1311)

50. The foregoing paragraphs are incorporated herein as if set forth in full.

51. Defendant intentionally discriminated against Plaintiff based upon race when it employed Plaintiff at a lower rate of pay than other non-African American employees.

52. Defendant intentionally discriminated against Plaintiff based upon race when it employed Plaintiff in the position of Computer Support Specialist Level 1, a job title not filled by non-African American employees.

53. Defendant intentionally discriminated against Plaintiff based upon race when it inordinately delayed promotion of Plaintiff from Office Services Assistant.

54. Defendant intentionally discriminated against Plaintiff based upon race when it kept Plaintiff employed and paid as an Offices Services Assistant despite having Plaintiff work out of class, performing Computer Support Specialist and/or Computer Specialist duties prior to Skutnik's departure in 2010.

55. Defendant did not act in good faith as to any CAA §201 (2 U.S.C. §1311) violations alleged herein Count II.

### VI.  PRAYER FOR RELIEF

56. WHEREFORE, Plaintiff MONTE A. RUFFIN requests:

57. An award of compensatory damages for extreme embarrassment, humiliation and mental anguish in the amount of $300,000;

58. Such legal or equitable remedy as the Court deems appropriate to redress violations of the CAA prohibition of intimidation and reprisal;

59. Damages equal to the amount of wages and benefits Plaintiff would have earned had his

actual promotion been to a position and/or rate of pay not tainted by violations of the CAA;

60. An order requiring Defendant to adjust Plaintiff's annual salary to $65,000 as of the departure of Lenny Skutnik in 2010 together with performance awards and salary increases which would result in a present annual salary of $74,000 to the date of this Complaint, according to proof;

61. Damages equal to the amount of wages and benefits Plaintiff would have earned had he been promoted without delays caused by violations of the CAA;

62. Interest on the amount of damages at the prevailing rate and according to proof;

63. An order requiring Defendant to retroactively promote Plaintiff to the position and rate of pay to which he would have been promoted had violations of the CAA not influenced his promotional process;

64. An order requiring Defendant to adjust Plaintiff's employment records to reflect the benefit and tenure status which Plaintiff would now enjoy concomitant with any ordered retroactive promotion and/or pay increase;

65. An order prohibiting Defendant from (a) placing or maintaining Stephanie Ruiz in Plaintiff's chain of command; (b) allowing Stephanie Ruiz to participate in or contribute to Plaintiff's future performance reviews, bonus considerations, raise evaluations, evaluations for promotion, or any other aspect of Plaintiff's employment with Defendant.

66. Reasonable attorney's fees and other costs according to proof.

> Respectfully Submitted,
>
> *Donald A. MacKay* (signature)
> Donald A. MacKay       DC BAR #986316

Attorney at Law
10601 Civic Center Drive, Suite #200
Rancho Cucamonga, CA  91730
Phone: 202-642-4646
Fax: 866-365-8821
Email: don@damackay.com