UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MONTE A. RUFFIN,<br><br>  Plaintiff,<br><br>  v.<br><br>CONGRESSIONAL BUDGET OFFICE,<br><br>  Defendant. | Civil No. 14-81 (JDB) |

## MEMORANDUM OPINION

Monte Ruffin, a computer support specialist at the Congressional Budget Office, has sued his employer for various instances of alleged discrimination. The CBO has moved to dismiss the final count of Ruffin's amended complaint—hostile work environment—arguing that Ruffin failed to exhaust that particular claim under the informal processes peculiar to the Congressional Accountability Act. As explained below, the Court agrees.

## BACKGROUND

The factual allegations in the complaint will be taken as true. Ruffin, an African-American man, Am. Compl. [ECF No. 9] ¶ 7, joined the CBO in 2009 as an office services assistant, id. ¶ 16. Early in his career there, however, Ruffin undertook many duties assigned to a computer specialist. Id. ¶¶ 18–19, 23. After several years of performing these extra duties, he requested a promotion commensurate with his actual role—specifically, to computer specialist. Id. ¶¶ 21–22.

Ruffin was soon promoted, but not to the level he aspired. Instead, he was named Computer Support Specialist Level 1—a position, he believes, that was either newly created or given a revised, lower pay range. Id. ¶ 26. In any event, this position carried a lower pay range

1

than that of computer specialist—and a lower one than Ruffin expected.  Compare id. ¶ 47 with id. ¶ 46.

Ruffin believes that this outcome was a result of racial discrimination, and so informed his supervisors before the salary reduction was finalized.  See id. ¶ 27.  Ruffin is especially concerned about the role of the human resources director in these decisions: he views her as "particularly rude and disrespectful towards African American male employees," id. ¶ 37; see also id. ¶ 33, and to him specifically, see id. ¶¶ 38–42, 44–45 (alleging, e.g., the HR director's "baseless" investigation into Ruffin and her spreading of "unsubstantiated and defamatory rumors").

According to the Notice of Invocation of Mediation, Ruffin "formally requested counseling on April 25, 2013, alleging disparate treatment and unfair compensation because of race, sex, and reprisal, in violation of sections 201 and 207 of the Congressional Accountability Act."  Ex. 1 to Def.'s Mot. to Dismiss [ECF No. 11-1] at 1 (emphasis removed).  After completing the required counseling and mediation, see Am. Compl. ¶ 1, Ruffin filed the present suit.  He alleges race and sex discrimination, retaliation, and, pertinent here, that his employers created a hostile work environment.  The CBO moves to dismiss that final count, arguing that Ruffin failed to exhaust that claim.

## **LEGAL STANDARD**

The CBO moves to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  As "[f]ederal courts are courts of limited jurisdiction[,] . . . [i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting" it.  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (internal citations omitted).  Thus, Ruffin must establish jurisdiction by a

preponderance of the evidence.  See Gordon v. Office of the Architect of the Capitol, 750 F. Supp. 2d 82, 87 (D.D.C. 2010).  In making this determination, "the Court must accept as true all of the factual allegations contained in the complaint," but those facts "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim."  Id. at 86–87 (internal quotation marks and citations omitted).

## ANALYSIS

"The Congressional Accountability Act . . . extends the protections of a number of federal remedial statutes, including Title VII of the Civil Rights Act of 1964, to employees of the legislative branch."  Hyson v. Architect of the Capitol, 802 F. Supp. 2d 84, 89 (D.D.C. 2011). The CAA also lays out a "procedure for consideration of alleged violations," consisting of counseling and mediation with the Office of Compliance, followed by either a formal complaint and hearing or a civil suit.  2 U.S.C. § 1401.

Should a litigant choose the latter option, as Ruffin has done here, the Act provides that "[t]he district courts of the United States shall have jurisdiction over any civil action commenced under section 1404 of this title and this section by a covered employee who has completed counseling . . . and mediation . . . .  A civil action may be commenced by a covered employee only to seek redress for a violation for which the employee has completed counseling and mediation."  Id. § 1408.  Thus, "it is apparent from the plain terms of the text that Congress intended counseling and mediation to be jurisdictional requirements."  Blackmon-Malloy v. U.S. Capitol Police Bd., 575 F.3d 699, 705 (D.C. Cir. 2009).

The CBO's argument, then, is a simple one: that Ruffin did not raise a hostile work environment claim in counseling and mediation, and so it is not a "violation for which" he may

3

"seek redress." 2 U.S.C. § 1408. In other words, to establish jurisdiction over his hostile work environment claim, Ruffin must prove exhaustion thereof.

Ruffin presents no hard evidence that he raised a hostile work environment claim before the Office of Compliance. But Ruffin believes he doesn't have to. After all, the operative statutory language is not "claim," but "violation." As a result, he argues, the "magic words" of legal claims (here, "hostile work environment") have no place in the administrative process. The focus, he believes, should be on the raised facts themselves, rather than their legal packaging.

That view finds little support from other courts. See, e.g., Gordon, 750 F. Supp. 2d at 93 (granting motion to dismiss as to hostile work environment claim where "plaintiff did not allege that she was subjected to a hostile work environment in either her requests for counseling or mediation" (citing Notice of Invocation of Mediation)); cf. Hyson, 802 F. Supp. 2d at 91 ("Hyson made a formal request for counseling with the Office of Compliance . . . . She submitted a typed memorandum to accompany her request, in which she asserted that . . . management had created a hostile work environment for her by repeatedly threatening her job without cause . . . .").

The Court need not decide, however, whether the words "hostile work environment" must appear explicitly in a request for counseling or a notice of invocation of mediation— because on the record here, even the factual allegations put forth in those documents are insufficient. A hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys, Inc., 510 U.S. 17, 21 (1993) (internal quotation marks and citation omitted). The summary that is set out in Ruffin's notice of invocation of mediation—that he "alleg[ed]

disparate treatment and unfair compensation because of race, sex, and reprisal," Ex. 1 to Def.'s Mot. at 1—would hardly provide fair notice that an abusive working environment was being claimed.

True, "the description on the Request for Counseling Form alone may not be dispositive" as to whether a claim was raised and exhausted. Moran v. U.S. Capitol Police Bd., 820 F. Supp. 2d 48, 55 (D.D.C. 2011). "Because confidentiality precludes courts from inquiring into what actually happened during the counseling period, other courts have looked to whether the employer was given adequate notice of the claim and the opportunity to handle it internally before the commencement of a formal legal action." Id.; see also Blackmon-Malloy, 575 F.3d at 711 ("Nothing in the CAA suggests Congress intended courts to engage in a mini-trial on the content of the counseling and mediation sessions, an inquiry that would be fraught with problems."). But where a plaintiff fails to present evidence to "determine whether that [adequate notice, etc.] occurred," he "fail[s] to meet h[is] burden to establish jurisdiction." Moran, 820 F. Supp. 2d at 55; see also Harrison v. Office of the Architect of the Capitol, 964 F. Supp. 2d 81, 98 (D.D.C. 2013) (relying on notice of invocation of mediation's description of request for counseling to determine whether an alleged violation could "reasonably have been expected to be encompassed within [that] administrative investigation," where "Plaintiff did not provide the request for counseling or any other documentation showing the Plaintiff raised the issue").

The same may be said here. The notice of invocation plainly does not contain an assertion of a hostile work environment. And Ruffin has produced no documentation to either gainsay or complement the notice of invocation of mediation. He has thus failed to carry his burden of proving exhaustion of—and with it, jurisdiction over—his hostile work environment claim. The claim must therefore be dismissed.

**CONCLUSION**

For the reasons set forth above, the CBO's motion to dismiss is granted.[1]  A separate Order will issue on this date.

/s/
JOHN D. BATES
United States District Judge

Dated:  February 10, 2015

---

[1] Count IV of Ruffin's amended complaint, in addition to asserting a hostile work environment claim, also asserts that CBO "and its employees intentionally discriminated against [Ruffin] based upon race and/or sex." Am. Compl. ¶ 72. In its opening brief, CBO argues that, "[t]o the extent that Count IV could be read to assert a claim beyond the hostile work environment claim, the claim is subsumed in the previous Counts." Def.'s Mot. at 10. CBO thus contends that the remainder of Count IV (after the hostile work environment portion is dismissed) should be stricken. See Fed. R. Civ. P. 12(f) (permitting courts to "strike from a pleading . . . any redundant . . . matter"). But in its reply brief, CBO rightly concedes that Ruffin's "use of the term 'and/or' . . . encompass[es] both claims that are based on race and sex as well as race or sex." Def.'s Reply [ECF No. 13] at 1 n.1. Because Count II refers to discrimination based on race alone, and Count III to "race and sex," Count IV's potential reference to discrimination based on sex alone is not redundant. Thus, the Court will not strike the remainder of Count IV.